Raymond E. MILLER, Plaintiff–Appellant,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company, a Pennsylvania corp.); Acands, Inc., a Delaware corp.; Combustion Engineering, Inc. (successor to M.H. Detrick Company & Walsh Refractory, a Delaware corp.); Fibreboard Corporation (successor to Plant Rubber & Asbestos Co., a Delaware corp.);

GAF Corporation (successor to Ruberoid Corp., a Delaware corp.); National Gypsum Company, a Delaware corporation (successor to Keasby & Mattison Corp., a Delaware corp.); Owens–Corning Fiberglass Corporation (a Delaware corp.); Pittsburgh Corning Corporation (successor to Unarco Industries, Inc.); Raymark Industries, Inc. (successor to Raybestos–Manhattan, Inc.); Turner & Newall, Ltd. (successor to Keasby & Mattison Corp.), a public corporation organized under the laws of the United Kingdom; and United States Gypsum Company, a Delaware corp., Defendants,

and

The Celotex Corporation (successor to Phillip–Carey Manufacturing Corp., a Delaware corp.); Eagle–Picher Industries, Inc., an Ohio corp.; the Keene Corporation (successor to Baldwin–Ehert Hill Co. and Corp.); and Owens–Illinois, Inc. (successor to Owens–Illinois Glass Co., an Illinois corp.), Defendants–Appellees.

No. 89–1097.

United States Court of Appeals, Tenth Circuit.

Nov. 26, 1991.

J. Conard Metcalf and Michael A. Patrick, Williams, Trine, Greenstein & Griffith, P.C., Boulder, Colo., for plaintiff-appellant.

Michael L. O'Donnell of White & Steele, P.C.; James D. Hinga of Baker & Hostetler, Denver, Colo.; Peggy S. Ball of Pryor, Carney and Johnson, Englewood, Colo., and William G. Meyer of Hutchinson, Black, Hill & Cook, Boulder, Colo., for defendants-appellees.

Before McKAY, Chief Judge, SEYMOUR, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff Raymond Miller brought this diversity action in the United States District Court for the District of Colorado against various manufacturers and distributors of asbestos products (together, Defendants)[1] alleging that he developed asbestosis, an asbestos-related disease, as a result of his exposure to Defendants' products. Plaintiff is presently appealing from an Order of the district court granting Defendants' Motion for Summary Judgment. *See Miller v. Celotex Corp.*, 708 F.Supp. 306 (D.Colo.1989).[2] The district court concluded that Plaintiff's complaint, filed on June 9, 1987, was untimely under a Colorado three-year statute of limitations applicable to personal injury actions brought against the manufacturer or seller of a product, *see* Colo.Sess.Laws.1977, ch. 199, § 13–80–127.5(1) at 819,[3] because Plaintiff's cause of action "probably" accrued in 1981 but "certainly no later than April 1984." *Miller*, 708 F.Supp. at 309. For the reasons set forth below, we reverse and remand.

It is undisputed by the parties that Plaintiff was employed as an insulator, at least from 1946 to 1951, and during this time he was exposed to asbestos-containing products. Plaintiff knew that Defendants' products contained asbestos but, initially,

1. While this appeal was pending, Defendants-appellees Eagle–Picher and Celotex filed Chapter 11 bankruptcy proceedings which remain pending. *In re Eagle–Picher Industries, Inc.*, Case No. 1–91–00101 (Bankr.S.D.Ohio, filed Jan. 7, 1991); *In re The Celotex Corp.*, Consolidated Nos. 90–10016–8B1 and 90–10017–8B1 (Bankr. M.D.Fla., filed Oct. 12, 1990). Accordingly, the automatic stay provision, 11 U.S.C. § 362, which stays judicial action "against the debtor" prohibits us from adjudicating Plaintiff's claims against Eagle–Picher and Celotex. *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1498 n. 1 (10th Cir.1990). We hereby order abatement of all proceedings in this appeal as to, and only as to, Eagle–Picher and Celotex. We are not enjoined from proceeding in this matter as to the remaining Defendants-appellees. *Id.* Plaintiff, Eagle–Picher and Celotex shall notify this court forthwith of any termination of the stay resulting from the above-described bankruptcies.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

3. When federal jurisdiction is invoked on the basis of diversity of citizenship a federal court is to apply the substantive law, including statutes of limitations, which the forum's courts would apply to the claims in the suit. *Erie R.R. v. Tompkins*, 304 U.S. 64, 71–80, 58 S.Ct. 817, 818–23, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). Here, the parties and the district court have assumed that Colorado's substantive law is applicable. Our review proceeds on the basis of that assumption.

he did not know that asbestos was dangerous. Plaintiff became aware of the hazards of asbestos from newspaper reports in the late 1970s.

The district court, in determining when Plaintiff's cause of action accrued and when the statute of limitations began to run, relied on Plaintiff's responses to interrogatories and numerous medical reports submitted by Defendants. Specifically, the district court first focused on Plaintiff's response to a July 1987 interrogatory which asked when he was first examined by a physician for the purpose of determining if he suffered from "any type of asbestos-related disease." Plaintiff answered that he was "diagnosed" with an unspecified disease by Dr. Bruce Brian in 1984. The district court coupled the answer to the July 1987 interrogatory with the only 1984 report in Dr. Brian's file which was dated April 10, 1984, and was from Dr. James Brubaker and stated the following impression: "pleural thickening with associated calcification of posterior aspects of both hemithoraces showing no significant change since 10/19/83."

The district court then looked to three reports in Dr. Brian's file from 1981 and 1983. The first of these reports was a consultation report from Dr. Stephen A. Holt dated October 13, 1983, which reflected the impression of "[d]iffuse pleural thickening posterior to both hemithoraces which is calcified consistent with asbestosis." The second report, dated October 14, 1981, was from Dr. S.H. Shealy to Dr. Brian and stated that "the exam demonstrates pleural thickening and calcification of the chest due to asbestosis. The pleural thickening seen on this exam is nonspecific, however, a mesothelyoma cannot be excluded." The final report relied on by the district court was prepared by Dr. Brian and was dated October 2, 1981. This report recounted Plaintiff's exposure to asbestos from 1945 to 1951 and stated the following observations: "pleural fibrosis and pleural calcification secondary to asbestos exposure probably." In the report Dr. Brian recommended that Plaintiff have a fluoroscopy of the pleura with a CT scan

of the pleura for future reference and routine yearly chest x-rays thereafter with detailed review of the films for abnormalities. The report concluded by stating that these "recommendations" were discussed with Plaintiff.

After considering Plaintiff's answer to the July 1987 interrogatory and the medical data in Dr. Brian's file, the district court concluded that:

In light of his answers to the July 1987 interrogatories corroborated by the data in Dr. Brian's file I conclude that there is no genuine issue of material fact that probably in September 1981, and certainly no later than April 1984, plaintiff knew or reasonably should have known that he had asbestosis and at least the potentially progressive condition of pleural fibrosis and pleural calcification caused by exposure to defendants' asbestos products. Plaintiff then knew, at least generally, of the hazards posed by his exposure to asbestos products manufactured by these defendants. Although plaintiff may not have become aware of his injury and its cause simultaneously, when plaintiff learned that his long term exposure to defendants' asbestos products caused his diagnosed condition, the requisite causal nexus was forged to establish notice of his claim.

*Miller,* 708 F.Supp. at 309.

■ In reviewing the district court's grant of summary judgment, this court must apply the same standard employed by the trial court under Fed.R.Civ.P. 56(c). *Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). Thus, the district court's determination can be affirmed only if the evidence presented, viewed in the light most favorable to Plaintiff, does not reveal any genuine issue of material fact concerning the accrual of Plaintiff's cause of action more than three years prior to commencement of this suit.

■ Plaintiff's theory is that his cause of action did not accrue until he discovered, *i.e.,* knew of or should have known of, his asbestosis, the injury upon which he premises his claim. Plaintiff relies primarily on an affidavit submitted by Dr. Lawrence

Repsher who examined Plaintiff and Plaintiff's medical file after this action was commenced. According to Dr. Repsher, asbestosis is not a more fully developed expression of any minimally disabling asbestos-related pleural changes such as pleural thickening, pleural fibrosis, and pleural calcification. Rather, asbestosis, according to Dr. Repsher, is a separate and distinct disease process that does not depend on the presence of any asbestos-related pleural changes for its development. In the opinion of Dr. Repsher, the first time Plaintiff's medical records show a diagnostic test that revealed any findings necessary to make a diagnosis of asbestosis is 1985, and prior to 1985 the diagnostic tests revealed pleural thickening.

Dr. Repsher's affidavit clearly conflicts with other medical evidence in the record. As discussed above, the medical records in Dr. Brian's file refer to asbestosis as early as 1981. The district court, in granting summary judgment in Defendants' favor, did not expressly refer to Dr. Repsher's affidavit, but it did acknowledge the conflicting evidence in the record regarding when Plaintiff's asbestosis became manifest and dismissed such factual dispute as not "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). According to the district court, Plaintiff's asbestos-related pleural changes were potentially progressive and, therefore, "although a difference of medical opinion may exist whether in fact plaintiff had asbestosis by April 1984, and whether pleural fibrosis and pleural calcification is a disease, what is *material* is whether plaintiff knew or reasonably should have known of the general nature

and extent of his injury." *Miller*, 708 F.Supp. at 310.

Our departure from the district court's analysis begins with its assumption that Plaintiff's asbestosis can be linked to his asbestos-related pleural changes. Because the question of when Plaintiff's cause of action accrued is being addressed in the context of a summary judgment, it must be assumed, based on Dr. Repsher's affidavit, that Plaintiff's asbestosis is not a complication of any of his initial asbestos-related pleural changes such as pleural thickening and pleural calcification, and that Plaintiff's asbestosis became manifest, at the earliest, in 1985.[4] Given this view of the record, Plaintiff's claim based on asbestosis is untimely under the limitation period relied upon by Defendants only if Plaintiff's asbestos-related pleural changes could trigger the running of a limitation period on his separate, distinct, and later-manifested asbestosis.

At the time this appeal was ready for decision, the Colorado Supreme Court had never expressly decided what events can trigger the commencement of a limitation period in an asbestos-related disease case. Therefore, we elected to certify the following question to the Colorado Supreme Court pursuant to Colo.App.R. 21.1:

> Does discovery of an initial asbestos-related disease (in this case asbestos related pleural disease manifested by pleural thickening and pleural calcification) trigger the running of a statute of limitations on a separate, distinct, and later manifested disease (here, asbestosis) engendered by the same asbestos exposure?

The Colorado Supreme Court, in an opinion, the details of which need not be set forth here, answered no. *Miller v. Armstrong World Industries, Inc.*, 817 P.2d 111, 113 (Colo.1991).

---

4. Dr. Repsher, in his affidavit, was also of the opinion that Plaintiff did not have asbestosis when he commenced this action despite the 1985 medical findings in his medical record. However, Plaintiff, in an affidavit filed in opposition to Defendants' motion for summary judgment and in deposition testimony, asserted that he was diagnosed in April 1987 with asbestosis by another doctor, Dr. Daniel Teitelbaum. Viewing Dr. Repsher's affidavit and Dr. Teitelbaum's diagnosis in the light most favorable to Plaintiff, as required when reviewing a summary judgment, we must assume that Plaintiff has asbestosis and his asbestosis became manifest, at the earliest, in 1985.

Based on the Colorado Supreme Court's opinion we conclude that the district court erred in dismissing Plaintiff's action as time barred. Our determination does not preclude a judgment against Plaintiff on the basis of a statute of limitations defense after further development of the issue at trial or otherwise. We speak only based on the assumption that asbestosis is separate and distinct from, and not a complication of, asbestos-related pleural disease and that Plaintiff's asbestosis became manifest and discoverable at the earliest in 1985. We recognize that both the relationship between asbestos-related pleural disease and asbestosis and when Plaintiff's asbestosis became manifest are factual questions.

Accordingly, the judgment of the United States District Court for the District of Colorado is REVERSED and the case is REMANDED for further proceedings.