962 F.2d 1492
 60 USLW 2779, Prod.Liab.Rep. (CCH) P 13,153
 Jay William BLAIR and Mildred L. Blair, Plaintiffs-Appellees,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant-Appellant,
and
Owens-Corning Fiberglas Corporation, Defendant.
Billy Franklin WILLIAMS, Plaintiff-Appellee,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant,
and
Owens-Corning Fiberglas Corporation, Defendant-Appellant.
Billy Franklin WILLIAMS, Plaintiff-Appellee,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant-Appellant,
and
Owens-Corning Fiberglas Corporation, Defendant.
Jay William BLAIR and Mildred L. Blair, Plaintiffs-Appellees,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant,
and
Owens-Corning Fiberglas Corporation, Defendant-Appellant.
Flora L. POWELL, individually, and as surviving wife of
Hubert C. Powell, deceased, Plaintiff-Appellee,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant,
and
Owens-Corning Fiberglas Corporation, Defendant-Appellant.
Flora L. POWELL, individually, and as surviving wife of
Hubert C. Powell, deceased, Plaintiff-Appellee,
v.
EAGLE-PICHER INDUSTRIES, INC., Defendant-Appellant,
and
Owens-Corning Fiberglas Corporation, Defendant.
Jay William BLAIR and Mildred L. Blair, Plaintiffs-Appellants,
v.
EAGLE-PICHER INDUSTRIES, INC., and Owens-Corning Fiberglas
Corporation, Defendants-Appellees.
Billy Franklin WILLIAMS, Plaintiff-Appellant,
v.
EAGLE-PICHER INDUSTRIES, INC. and Owens-Corning Fiberglas
Corporation, Defendants-Appellees.
Flora L. POWELL, individually, and as surviving wife of
Hubert C. Powell, deceased, Plaintiff-Appellant,
v.
EAGLE-PICHER INDUSTRIES, INC. and Owens-Corning Fiberglas
Corporation, Defendants-Appellees.
 Nos. 90-5133 to 90-5138, 90-5148 to 90-5150.
 United States Court of Appeals,
Tenth Circuit.
 May 5, 1992.
 
 Harmon S. Graves III of Tilly & Graves, P.C., Denver, Colo., for defendants-appellants/cross-appellees (John W. Grund of Tilly & Graves, P.C. Denver, Colo., on the briefs for defendant-appellant/cross-appellee Owens-Corning Fiberglas Corp.; Martin J. Murphy of Davis and Young Co., L.P.A., Cleveland, Ohio, on the briefs for defendant-appellant/cross-appellee Eagle-Picher Industries, Inc.).
 John W. Norman (Gina L. Hendryx, with him on the briefs) of Norman & Edem, P.C., Oklahoma City, Okl., for plaintiffs-appellees/cross-appellants.
 Before ANDERSON and SETH, Circuit Judges, and SAFFELS, District Judge*.
 SETH, Circuit Judge.
 
 
 1
 This appeal arises from the trial of three "tireworker" asbestos cases. PlaintiffsAppellees sued Eagle-Picher and Owens-Corning claiming lung damage from airborne asbestos fibers from Defendants-Appellants' products. Appellants challenge the denial of their motions for directed verdict and for judgment notwithstanding the verdict on the grounds that Appellees failed to produce evidence of exposure to Appellants' products sufficient to support a verdict against them. Appellants also claim that the district court improperly instructed the jury on the issue of causation. Alternatively, Appellants claim numerous points of error relating to the format and execution of the trial.
 
 
 2
 Plaintiffs Blair, Williams, and Powell worked in the B.F. Goodrich plant in Miami, Oklahoma for 39, 28, and 27 years, respectively. (Plaintiff Powell was the spouse of the deceased tireworker Hubert Powell. For ease of reference, however, "Plaintiffs" or "Appellees" will refer to the three tireworkers Blair, Williams, and Powell.) The Miami plant manufactured tires of all kinds from 1946 until its closure in 1986. The manufacture of tires is a hot and dusty job. Miles of pipe carrying steam and hot liquids ran throughout the forty-acre plant. In order to prevent heat from escaping from the hot pipes, the pipes were insulated with products manufactured by Appellants and others. Some of these products contained varying amounts of asbestos. These asbestos containing products are the subject of this litigation.
 
 
 3
 Plaintiffs' cases were tried together in an unusual trial format. The trial was divided into common and specific phases. Voir dire for the Williams and Blair juries was conducted contemporaneously in one courtroom and voir dire for the Powell jury was conducted in a separate courtroom along with another case which was subsequently dismissed.
 
 
 4
 All three juries were joined to hear common opening statements and liability evidence common to all three cases. Testimony from the common phase of the trial was videotaped and simultaneously televised to the juries in the district court's largest courtroom. The juries were then separated to hear case specific opening statements and evidence on causation and damages. Closing arguments were done individually for each case.
 
 
 5
 By pretrial order, each Plaintiff was allowed seven expert witnesses while Defendants were allowed a collective total of seven expert witnesses in each case. Testimony by experts was given in narrative form and was limited to thirty minutes. The district court limited cross-examination to forty-five minutes per expert.
 
 
 6
 In all three cases the juries found for the Plaintiffs. In the Blair case, the jury awarded the Plaintiffs, Jay and Mildred Blair, $300,000 and $50,000, respectively. In Williams, the jury awarded the Plaintiff $1,200,000 and the district court ordered a remittitur of $600,000 thereby reducing the judgment to $600,000. In Powell, the jury awarded the Plaintiff $200,000. Each award was offset by the amount already obtained through settlements with other defendants pursuant to Okla.Stat.Ann. tit. 12, § 832(H)(1).
 
 
 7
 Sufficiency of the Evidence Under Oklahoma Products Liability Law
 
 
 8
 Appellants first contend that the district court erred when it refused to grant their motions for directed verdict and for judgment notwithstanding the verdict because Appellees did not bring forth legally sufficient evidence of exposure to Appellants' products. Our review of the denial of the motions for directed verdict and for judgment notwithstanding the verdict is de novo. Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1416 (10th Cir.1990). The trial court will be overturned only if "the evidence taken in the light most favorable to the nonmoving party and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party." Id.
 
 
 9
 In order for a plaintiff in Oklahoma to prevail in a products liability action such as this one, the plaintiff must first prove that the defendant's product actually caused the injury. Kirkland v. General Motors Corp., 521 P.2d 1353, 1363 (Okla.1974). The mere possibility that the product caused the injury is not enough. Id. In Case v. Fibreboard, 743 P.2d 1062 (Okla.1987), the Oklahoma Supreme Court reiterated the requirement of a causative link between the defective product and the plaintiff's injuries. In answer to a certified question from this court, the Oklahoma Supreme Court rejected the market share liability theory in asbestos cases. Id. at 1067. The Court stated:
 
 
 10
 "Although plaintiffs in asbestos related injury cases may not be able in all cases to identify potential defendants, the public policy favoring recovery on the part of an innocent plaintiff does not justify the abrogation of the rights of a potential defendant to have a causative link proven between that defendant's specific tortious acts and the plaintiff's injuries where there is a lack of circumstances which would insure that there was a significant probability that those acts were related to the injury."
 
 
 11
 Id. Thus, plaintiffs in Oklahoma products liability cases must show that there is a significant probability that the defendant's products caused their injuries.
 
 
 12
 In Dillon v. Fibreboard, 919 F.2d 1488, 1491 (10th Cir.1990), this Court approved a three-part analysis of facts under the significant probability standard of Case. The three-part analysis is derived from the Fourth Circuit opinion in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir.1986), and requires "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked."
 
 
 13
 It appears from the record that the trial court strayed from the significant probability standard as set forth in Case and Dillon when it announced its own definition of significant probability in Master Order No. 4. Master Order No. 4 addressed Appellants' motions for summary judgment. In denying Appellants' motions the trial court stated, "In terms of the tireworker cases, a 'significant probability' involves evidence (1) that a defendant's product was present at the plant, and (2) that the plaintiff worked at the plant at the time of installation or some other application of defendant's product. 'Application' contemplates moving or cutting the product such that dust might be produced." Master Order No. 4 at 3. While it is not clear from the record that the standard set out in Master Order No. 4 was the standard followed throughout the trial, it is reasonable to assume that this was also the basis for denying Appellants' motions for directed verdict and for judgment notwithstanding the verdict.
 
 
 14
 The district court's formulation of significant probability as set out in Master Order No. 4 is erroneous because it does not require the Plaintiff to prove that he was actually exposed to the Defendants' products. This is clearly contrary to Case and Dillon. Appellees argue that the standard enunciated by the district court is the same as that in Dillon. We disagree. In Dillon, we said that plaintiff's burden of proof of causation "would be satisfied by proof that [plaintiff] had sufficient contact with identifiable products manufactured by defendants to cause his lung [condition]." Dillon, 919 F.2d at 1491. The standard used by the district court in Master Order No. 4 does not require any contact between the Plaintiffs and the Defendants' products. The trial court wrongly assumed that sufficient contact could be shown by proof that a Defendant's product was somewhere inside a forty-acre facility at the same time as a Plaintiff. To approve the standard adopted by the trial court would be to dilute considerably Oklahoma's significant probability standard.
 
 
 15
 Applying the significant probability standard from Case and Dillon the court should have granted Appellants' motions for directed verdict and for judgment notwithstanding the verdict in the Powell case because there was insufficient evidence of exposure to Appellants' products to support a verdict for Powell. In the Williams and Blair cases, however, Appellees produced sufficient evidence to support the district court's denial of the motions.
 
 
 16
 The evidence in the record taken in the light most favorable to Mr. Powell is not sufficient to avoid a directed verdict or a judgment notwithstanding the verdict. There is no evidence in the record to show that Powell was ever exposed to asbestos from Appellants' products. Mr. Ellis, an insulation applicator at the plant and Plaintiff's main exposure witness, testified that he knew Mr. Powell and that Powell worked in the green tire repair area. Ellis also testified that he stored asbestos containing materials in this area. Ellis specifically testified, however, that he could not recall applying Defendants' materials in the presence of Powell.
 
 
 17
 "THE COURT: Is it your testimony that you made no application of any of these products in [Powell's work] area but that you stored some, is that.
 
 
 18
 "THE WITNESS [Ellis]: No, I didn't, I didn't--while he was working there in that area, I can't recall ever doing any insulation work where he was working, but I had materials stored in that area, yes, sir."
 
 
 19
 (Testimony of Bob Ellis Vol. XIV at 15.)
 
 
 20
 The testimony of Powell's co-worker, Mr. Brown, is similarly unhelpful to Powell. Brown testified that he and Powell worked at similar jobs until Powell's retirement in 1973. His testimony established that workers in the area of the plant where he and Powell worked were exposed to airborne dust. However, Brown further testified that to his knowledge the dust was mostly soapstone, carbon black, ground rubber, and occasionally insulation. This evidence, viewed in the light most favorable to Mr. Powell, is insufficient to establish a significant probability that the Defendants' products caused his injuries.
 
 
 21
 Appellants' motions for directed verdict and for judgment notwithstanding the verdict in the Williams and Blair cases were properly denied. Viewing the evidence in the light most favorable to Williams and Blair, we hold that there was sufficient evidence of exposure to Appellants' products to meet Oklahoma's significant probability standard. Appellees' main witness on exposure was Mr. Ellis. Ellis testified that he knew both Williams and Blair and that he remembered being around them while he was doing asbestos insulation work. Although Ellis stated that he could not remember with 100% accuracy where he had applied Appellants' products within the plant, he testified that he had used large quantities of Owens-Corning Kaylo and Eagle-Picher "Super 66" cement throughout the plant. Ellis testified that possibly as much as one-half of all the insulation he used in the B.F. Goodrich plant was Owens-Corning Kaylo.
 
 
 22
 Individually, Mr. Blair testified that he and other workers were exposed to a large amount of dust from Ellis' work. Blair testified that Ellis "could push this scaffold over a machine that some of us worked on and get up there and apply this asbestos to these broken--to these pipes up there; and while he was doing that all the dust and stuff was coming right down on us." (Vol. XX at 60.) Reasonable men, viewing this evidence in the light most favorable to Blair and Williams, could conclude that there was a significant probability that Appellants' products caused their injuries.
 
 Jury Instructions
 
 23
 Appellants' second point on appeal is that the district court erred in its instructions to the jury by instructing the jury on an improper standard of causation. We review jury instructions to "determine whether the instruction states the governing law and provides the jury with an ample understanding of the relevant issues and the applicable law." Street v. Parham, 929 F.2d 537, 539 (10th Cir.1991). We will reverse for an error in jury instructions only if the error is determined to have been prejudicial in light of the whole record. United States v. Denny, 939 F.2d 1449, 1454 (10th Cir.1991).
 
 
 24
 The jury instructions in question read as follows:
 
 
 25
 "DIRECT CAUSE
 
 
 26
 "YOU ARE INSTRUCTED THAT A 'DIRECT CAUSE' OF AN INJURY IS THAT CAUSE WHICH IN NATURAL AND CONTINUOUS SEQUENCE CONTRIBUTED TO PRODUCING THE INJURY. IT NEED NOT BE THE ONLY, NOR THE LAST CAUSE. IT IS SUFFICIENT IF IT CONCURS WITH SOME OTHER CAUSE WHICH IN COMBINATION WITH IT, BRINGS ABOUT OR CONTRIBUTES TO THE INJURY.
 
 
 27
 "CAUSATION
 
 
 28
 "YOU ARE FURTHER INSTRUCTED THAT EVIDENCE THAT A DEFENDANT'S ASBESTOS CONTAINING PRODUCT WAS AT THE B.F. GOODRICH MIAMI TIRE PLANT AT THE SAME TIME AS PLAINTIFF JAY BLAIR IS NOT SUFFICIENT EVIDENCE FROM WHICH YOU MAY FIND THAT PLAINTIFF'S INJURY, IF ANY, WAS DIRECTLY CAUSED BY THAT ASBESTOS CONTAINING PRODUCT. PLAINTIFF JAY BLAIR MUST ESTABLISH THAT A DEFENDANT'S ASBESTOS CONTAINING PRODUCTS WERE PRESENT IN THE PLANT WHERE PLAINTIFF WORKED AND THAT HE INHALED A SUFFICIENT QUANTITY OF SAID PRODUCT, ALONE OR IN COMBINATION WITH OTHER ASBESTOS CONTAINING PRODUCTS, OVER A SUFFICIENT PERIOD OF TIME TO CAUSE HIS ASBESTOS RELATED INJURY, IF ANY."
 
 
 29
 (Blair Indiv. Trial Vol. I tab 141 at 31-32.) (Note: Similar instructions were given in the Powell and Williams trials.) Appellants claim that the direct cause instruction taken with the causation instruction allowed the jury to find Appellants liable based on any exposure to Appellants' products. We find no merit in this claim. The causation instruction given by the district court specifically stated that in order to prevail, a Plaintiff must prove that he "inhaled a sufficient quantity of [Appellants'] product." This precludes a finding of liability based on a possibility of exposure and comports with the significant probability standard of Case.
 
 
 30
 Further, the Oklahoma Supreme Court has approved jury instructions that are substantially similar to ones in issue here. See Messler v. Simmons Gun Specialties, Inc., 687 P.2d 121, 129 (Okla.1984); Fields v. Volkswagen of America, Inc., 555 P.2d 48, 57 (Okla.1976). Under the facts of this case, we hold that the instructions given by the district court were adequate and do not constitute reversible error.
 
 
 31
 Jury Passion or Prejudice and the Need for a New Trial
 
 
 32
 Appellants contend that actions taken by Williams' counsel during both the common phase of the trial and during the case specific phase of the trial resulted in jury verdicts in the Blair, Powell, and Williams cases which were tainted by passion and prejudice. Appellants focus on two incidents in particular. First, during the common voir dire in the Williams and Blair trials, Plaintiff Williams was brought into the courtroom in a wheelchair suffering from an unspecified illness. The following excerpt from a later order issued by the trial court outlines the incident.
 
 
 33
 "The first day of trial Mr. Williams was brought to the courtroom in an acutely ill condition. The Court described on the record his appearance of being pale, very weak, and bent over in his wheel chair. He literally appeared in a terminal condition. During the voir dire examination of the jury Mr. Williams groaned audibly on numerous occasions interrupting the proceedings. After about thirty minutes to an hour Plaintiff's counsel ushered Plaintiff out of the courtroom where he was taken and admitted to a hospital."
 
 
 34
 (Appellants' Brief, Appendix D at 4.)
 
 
 35
 The second incident occurred during the opening argument in the common phase of the trial. Williams' counsel referred to Williams' physical condition during voir dire and stated that the condition was from pneumonia which was a common result of asbestosis.
 
 
 36
 "Mr. Williams, who you all saw yesterday in the wheel chair, he cannot be here today. The evidence will be that he had to be hospitalized with pneumonia, which is one of the many complications of asbestosis."
 
 
 37
 (Vol. VIII at 6.) Appellants' motions for mistrial were denied after each incident. During the remainder of the trial, Williams' counsel introduced no evidence to support the statement he made during his opening regarding Williams' condition. The court never admonished the juries or gave them a jury instruction clarifying the error.
 
 
 38
 Following the verdicts, Appellants' post-trial motions for judgment notwithstanding the verdict or in the alternative for a new trial were denied in each of the three cases. The court did, however, grant a remittitur in Williams reducing the jury's initial $1.2 million dollar jury verdict by half. The court stated in its order:
 
 
 39
 "Plaintiff's appearance in court in an acutely ill condition, coupled with his counsel's misrepresentation in opening statement, and the absence of medical evidence supporting the reason for Plaintiff's current hospitalization, sowed the seeds for an award so excessive as to shock the judicial conscience and raise the inference of passion and prejudice."
 
 
 40
 We must determine whether the "inference of passion and prejudice" found in the Williams verdict could be cured by a remittitur or warranted a new trial. We also must determine whether the statement in oral argument regarding pneumonia prejudiced the Powell and Blair juries.
 
 
 41
 We begin with the trial court's grant of remittitur in the Williams case. In Mason v. Texaco, Inc., 948 F.2d 1546 (10th Cir.1991), we recently stated that "[i]t is well settled that mere excessiveness in the amount of an award may be cured by a remittitur, whereas excessiveness which results from jury passion and prejudice may not be so cured. In that case, a new trial is required." Id. at 1561. See also Malandris v. Merrill Lynch, Pierce, Fenner & Smith, 703 F.2d 1152, 1168 (10th Cir.1981).
 
 
 42
 "The trial court's determination as to whether the verdict is the result of passion or prejudice will not be disturbed on appeal, unless the determination is clearly erroneous." J. Moore, Moore's Federal Practice, 6A p 59.08. Applying the Mason standard to the trial court's findings relative to Williams appears to leave us with but one conclusion; namely, that a new trial is required. In its order the trial court expressly found that the award was "so excessive as to shock the judicial conscience and raise the inference of passion and prejudice." As we noted above, a verdict that is the product of passion and prejudice cannot be cured by remittitur and a new trial is required. Mason, 948 F.2d at 1561.
 
 
 43
 The conclusion that the jury's verdict in Williams was tainted by passion and prejudice is supported by a careful review of the trial judge's comments with regard to Williams' condition. The judge stated:
 
 
 44
 "[J]ust from a lay standpoint, if [Mr. Williams] is here 90 days from today I'll be surprised, I'll be absolutely surprised if he's alive and has a pulse within 90 days from today, from his appearance in this courtroom....
 
 
 45
 ....
 
 
 46
 "... I absolutely couldn't believe it when [Williams] entered this courtroom on the day we were picking that jury. Why couldn't I believe it? I thought--I couldn't believe it from a standpoint of just the humanity of it. That man was sick. That guy sitting in this courtroom moaning and groaning carrying on like that, he needed to be in the hospital bad, and I couldn't believe that that man was permitted to be in this courtroom. I was astounded by it, and I'm still astounded by it that you, representing the plaintiff, would permit a man that ill to come into this courtroom.... I don't believe I have ever tried a case where I've seen a man that looked as ill and acted as ill as this gentleman right here, and my heart goes out to him."
 
 
 47
 (Supp.Vol. VIII at 22-23.) It is difficult to imagine that the jury was not affected in the same way as the trial judge. These comments by the judge taken with the size of the verdict in Williams are enough to establish that the verdict was the product of passion and prejudice. Therefore, the entry of remittitur was inappropriate and a new trial should be granted for Defendants in the Williams case.
 
 
 48
 We next must determine whether Williams' counsel's remarks before the Blair and Powell juries regarding Mr. Williams' condition were prejudicial to the Defendants in those cases. It is uncontested that Williams' counsel's statement attributing Mr. Williams' deathly appearance to "pneumonia, which is one of the many complications of asbestosis" was unsupported by the evidence. While it is true that the Blair jury was allowed to see Mr. Williams during voir dire, Appellants have produced no evidence either in the amount of damages awarded in Blair or in the finding of liability to suggest that the verdict was the result of passion and prejudice.
 
 
 49
 Appellants' claim that Williams' counsel's comment in opening statements prejudiced the Powell jury is even more tenuous. The Powell jury never saw Mr. Williams. Appellants' argument that counsel's statement regarding Mr. Williams' condition being attributable to asbestosis inflamed the jury and led to a verdict that was the result of passion and prejudice is without merit.
 
 Trial Format
 
 50
 Appellants next contend that the format of the trial was fundamentally unfair and prevented them from being able to fully defend the claims against them. Specifically, Appellants argue that the limitation on the number of expert witnesses they were allowed to call substantially prejudiced the presentation of their case. Appellants also argue that the district court's limitation on cross-examination of expert witnesses precluded a fair opportunity for effective cross-examination. Appellant Eagle-Picher claims separately that the presence of video cameras in the courtroom was disruptive and, therefore, violated its right to a fair trial.
 
 
 51
 We look first at the objections concerning expert witnesses. In a pretrial order the district court collectively limited the number of expert witnesses that the Defendants could call to seven. The district court also limited cross-examination of experts by either side to forty-five minutes.
 
 
 52
 It is axiomatic that the trial court has considerable discretion in determining how a trial is to be conducted. Palmer v. Krueger, 897 F.2d 1529, 1538 (10th Cir.1990); Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir.1987); Chapman v. United States, 169 F.2d 641, 642-43 (10th Cir.1948). We have noted previously that "[t]here can be no doubt of the power of the trial court, in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses...." Chapman, 169 F.2d at 642.
 
 
 53
 At the time the present cases came to trial, the Northern District of Oklahoma had almost 600 asbestos cases on its docket. In light of this enormous case load, we see nothing to suggest that the district court abused its discretion in the conduct of this trial with respect to limits on the number of experts to be called by each side or limits on the amount of time for cross-examination.
 
 
 54
 Next, we address Eagle-Picher's contention that the presence of video cameras in the courtroom was disruptive, intrusive, and violated its right to a fair trial. This court will not disturb the trial court's conduct of trial proceedings unless "it affirmatively appears from the record that the trial court abused its discretion." C.A. Assoc. v. Dow Chem. Co., 918 F.2d 1485, 1489 (10th Cir.1990). After a review of the record, we find that the trial court did not abuse its discretion in allowing the trial to be videotaped. Eagle-Picher points to no specific prejudice sustained by it; rather, it only suggests the possibility that jurors may have been distracted by the cameras. It is our impression from reading the record that the videotaping was not a major distraction during the trial. The trial court commenting on the videotaping procedures said, "I have been impressed with how ... unobtrusive our videotaping has been.... I think it really hasn't been any kind of an obstruction to us...." (Supp.Vol. IV at 1208-09.) Under these circumstances, we hold that the trial court did not abuse its discretion in allowing the common phase of the trial to be videotaped.
 
 The Allen Instruction in Blair
 
 55
 Appellants also contend that the district court erred in the Allen instruction it gave to the Blair jury. After six hours of deliberation the jury informed the district court that "we cannot come to a complete agreement." (Blair Vol. V at 452.) The court then instructed the jury to recommence deliberations and to make a reasonable effort to arrive at a verdict.
 
 
 56
 At the outset, we note that Allen instructions are to be used with caution. Reazin v. Blue Cross and Blue Shield, 899 F.2d 951, 978 (10th Cir.1990). An Allen instruction, however, will not be the basis for reversal or for a new trial unless the instruction was coercive. See United States v. McKinney, 822 F.2d 946, 951 (10th Cir.1987). Therefore, we must determine whether the instruction given in this case was coercive.
 
 
 57
 Although the district court mentioned in its instruction the time that the jurors had spent hearing the case and the time that another jury would spend on the case if the jury could not reach agreement, the court also reminded the jurors repeatedly that their continued deliberations must be within the evidence and the law presented to them. Additionally, the court instructed the jurors that they were not to "surrender any honest conviction that you have in the case." (Blair Indiv. Vol. V at 457.) The instruction given by the district court was similar to one that we found to be noncoercive in Reazin, 899 F.2d at 978. See also United States v. Dyba, 554 F.2d 417, 421 (10th Cir.1977). Thus, we find no merit in Appellants' claim that the Allen instruction was coercive.
 
 
 58
 Finally, Plaintiffs-Appellees argue on cross-appeal that the district court erred in directing a verdict for Defendants on the issue of punitive damages. After carefully reviewing the record and Plaintiffs' arguments we find no error in the district court's ruling.
 
 
 59
 Accordingly, the decision of the District Court for the Northern District of Oklahoma in Blair is AFFIRMED, and the decisions in Williams and Powell are REVERSED and REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation