**Peggy Sue LYONS, As Administratrix of the Estate of Carl Lyons, Deceased, Plaintiff,**

v.

**GARLOCK, INC., et al., Defendants.**

**No. 90–1254–JTM.**

United States District Court,
D. Kansas.

Aug. 7, 1998.

Bobby Lee Odom, Russell B. Winburn, Odom & Elliott, Fayetteville, AR, Paul H.

Hulsey, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, for Plaintiff.

E. Ralph Walker, Brown, Winick, Graves, Gross, Des Moines, IA, Dennis J. Stanchik, Olathe, KS, for Armstrong World Industries, Inc., Flexitallic Gasket Co., Inc., National Gypsum Co. and U.S. Gypsum Co.

James E. Kelley, Jr., Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Celotex Corp.

Vincent R. McCarthy, Bryan Cave LLP, Kansas City, MO, for Eagle–Picher Industries, Inc.

Bruce Beye, Overland Park, KS, for Fibreboard Corp.

Craig W. West, Foulston & Siefkin L.L.P., Wichita, KS, R. Michael Steele, Sherman, Taff & Bangert, P.C., Leawood, KS, for Garlock Inc.

Jody D. Klask, Cheatham & Acker, West Bloomfield, MI, for HK Porter Co., Inc.

Denis P. Rischard, Abowitz & Rhodes, P.C., Oklahoma City, OK, Dennis J. Stanchik, Olathe, KS, for Keene Corp.

Bruce Beye, Overland Park, KS, Kathryn M O'Brien, Watson & Marshall L.C., Kansas City, MO, Steven B. Moore, Clayton E. Dickey, Rasmussen, Barton & Willis, L.L.C., Kansas City, MO, for Owens–Corning Fiberglas Corp.

Bruce Beye, Overland, Park, KS, Virginia M. Giokaris, Brian W. Fields, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Pittsburgh Corning Corp. and Owens–Illinois.

Bruce Beye, Overland Park, KS, for Rock Wool Manufacturing Co.

Bryce A. Abbott, Martin, Churchill, Blair, Hill, Cole & Hollander, Chtd., Wichita, KS, William R. Smith, Law Offices of Wm. R. Smith, Wichita, KS, for WR Grace & Company—Conn.

James C. Wright, Wright & Shafer, Topeka, KS, for The Flintkote.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

The present action involves a claim by the plaintiff, Peggy Sue Lyons, in her role as administrator of the estate of Carl Lyons, that exposure to asbestos insulation at the Chevron Chemical Plant in Pittsburg, Kansas led to Lyons' death. Defendant Owens–Corning Fiberglass has moved for summary judgment on plaintiff's claim, arguing the plaintiff has failed to produce any evidence the decedent was exposed to its asbestos product, known as Kaylo.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The present action was filed after Lyons' death. Accordingly, the only evidence concerning Lyons' exposure to asbestos during his work at the plant between 1949 and 1982 comes from co-workers. In her response to Owens–Corning's motion, plaintiff cites the testimony of co-worker Sherman Wasson as establishing that in his work Lyons "removed asbestos containing pipecovering ... 'probably all the time he was out there.'" (Plf. Br. at 8, citing Wasson dep. at 21).

To the extent that this suggests Lyons was constantly, or even frequently involved with such work, it substantially overstates Wasson's actually testimony. Wasson does make the response in his deposition, "Probably all the time he was out there really," but the question put to him was not about how frequently he worked around asbestos insulation. Rather, Wasson was asked "Did Mr. Lyons *ever* remove pipe covering?" (Wasson dep. at 21) (emphasis added). In other words, the question and response establish only that Lyons sometimes worked removing insulation, and that this work happened throughout his employment. Wasson's testimony does not support a conclusion that Lyons frequently performed such work. Indeed, he testified that the company "had one crew that just insulated all the time," and that Lyons and Wasson only performed the work "when they needed some help sometimes." (Id.).

Wasson also testified that Lyons sometimes was exposed to fly ash or asbestos from pipes while he worked around boilers at the plant. (Id. at 23–24). However, Wasson in his deposition also agreed with the proposition that it was "sort of an unusual thing" for he and Lyons to insulate pipes. (Id. at 40). Wasson specifically testified that, for the "rare occasions" where they did insulat-

ing work, he could not recall the trade name, brand name or manufacturer of the insulation. (Id. at 46, 48–49).

Plaintiff also cites the testimony of insulators Donald Montgomery, Hayes McCaskill, and Clyde Hymer, Jr. McCaskill worked at the plant on various occasions from the late 1940s until the late 1960s. McCaskill recalls applying Kaylo in 1966 or 1967. Montgomery worked as an insulator at the plant off and on between 1966 and 1977, before working full-time at the plant from 1977 to 1982. Hymer worked at the plant in 1957, and recalled using Kaylo at the plant. Montgomery testified that Kaylo was used at the plant while he worked there.

Montgomery, however, testified that he never knew or worked with Lyons. Montgomery worked for contractors of the plant on five projects, each lasting between one and five weeks at the plant, between 1966 to 1971. He never worked with Lyons on any of these projects. (Montgomery dep. at 49).

Hymer was able to remember eight co-workers at the plant; Lyons was not among them. There is no evidence Hymer ever worked with Lyons. There is no evidence Hymer was ever exposed to Kaylo except for one occasion in 1957. There is no evidence concerning the frequency or duration of Hymer's exposure to Kaylo.

McCaskill testified it would be "impossible" for him to remember the nature or duration of the ten to fifteen occasions he worked at the plant over the course of the three decades. (McCaskill dep. at 178). He does not list Lyons among his co-workers. Except for the one job in 1966 or 1967, he cannot identify Kaylo as a product used at the plant. For that one job, McCaskill also testified to using Kaylo together with insulation products from three other manufacturers. There is no evidence Lyons and McCaskill worked together in 1966 or 1967.

### Conclusions of Law

The defendant's motion contends that summary judgment should be granted, since plaintiff has failed to present any evidence Lyons was exposed to its product. In this context, it cites both *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986) and a recent decision by Judge Belot in an asbestos action, *Smith v. Fibreboard Corp.*,

Slip op., Case No. 92–1035–MLB (D.Kan. March 24, 1998). In the latter, the court concluded that the plaintiff had failed to provide sufficient evidence of exposure to the defendants' asbestos products. The court wrote:

Causation is an essential element of a products liability case under Kansas law. *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 631, 886 P.2d 869, 887 (1994). Traditionally, that means a plaintiff must prove that a particular defendant's product caused his ·injuries. *See Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 50, 661 P.2d 348, 357 (1983) ("[The plaintiff] still has the burden of establishing that the particular defendant has sold a product ... and that it caused his injury.") (quoting other sources); *Menne v. Celotex Corp.*, 861 F.2d 1453, 1461–62, 1465–66 (10th Cir.1988) (stating traditional causation requirement and also discussing the application of one such theory to a Nebraska asbestos case). *Cf. Conley v. Boyle Drug Co.*, 570 So.2d 275, 280–81 (Fla.1990) (containing a good discussion of the various alternative theories of causation which some courts have used to excuse the necessity of tying injury to a particular manufacturer's product) (citing additional cases). While plaintiffs and defendants argue over what degree of exposure to a product is necessary for that exposure to be regarded as a "substantial cause" of injury, plaintiffs acknowledge their obligation to show that they were in fact exposed to the products of a particular defendant in order to recover from that defendant. Here, plaintiffs fail to jump that initial hurdle.

Slip op. at 7–8 (footnote and pleading citation omitted).

In the response brief, the plaintiff argues that *Lohrmann* is not well-supported, and suggests the Tenth Circuit has supported a modified approach in its decisions applying Oklahoma law in *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1491 (10th Cir.1990) and *Blair v. Eagle–Picher Industries*, 962 F.2d 1492, 1495 (10th Cir.1992), *cert. denied*, 506 U.S. 974, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992). .

██ The court finds neither of the cited decisions alters the standard of causation

which plaintiff must meet. In *Dillon,* the court specifically approved the *Lohrmann* method for demonstrating causation as "well-formulated." *Dillon,* 919 F.2d at 1491. The plaintiff must provide " 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.' " *Id.* (quoting Order of the District Court). While finding that the trial court applied the correct legal standard, the court in *Dillon* ultimately concluded the trial court erred in granting summary judgment on the issue of causation. The Court of Appeals held that the plaintiff's evidence met the standard:

> Because the insulator's testimony specifically identified defendant's products as present at the refinery, and because *Mr. Dillon himself testified that he physically handled all the kinds of asbestos insulation products installed at the refinery,* Mr. Dillon offered rebuttal evidence which supports a "significant probability" that Mr. Dillon's illness was caused by defendants' products. . . .

*Id.,* at 1492 (emphasis added).

In *Blair v. Eagle–Picher Industries, Inc.,* 962, F.2d 1492, 1495 (10th Cir.1992), also applying Oklahoma law, the court again concluded that in an action for damages due to a defective product, the "mere possibility that the product caused the injury is not enough." In *Blair,* three workers, Blair, Williams, and Powell, sued for damages due to exposure to asbestos insulation. The actions were tried simultaneously, and the three juries returned damages to each of the workers. The district court denied the defendants' motions for directed verdict on the issue of causation, concluding the plaintiffs met their burden by proof "(1) that a defendant's product was present at the plant, and (2) that the plaintiff worked at the plant at the time of installation or some other application of defendant's product." *Id.,* at 1496 (quoting District Court Master Order No. 4).

The Tenth Circuit concluded that this standard was erroneous, and was clearly contrary to *Dillon.* The standard used by the district court "wrongly assumed that sufficient contact could be shown by proof that a Defendant's product was somewhere inside a forty-acre facility at the same time as a Plaintiff." *Id.* Applying the *Dillon–Lohrmann* standard,

the Court of Appeals concluded that the evidence required different results as to the motions for directed verdict. As to Williams and Powell, the court held that the motions for directed verdict were properly denied, since there was sufficient evidence of exposure to the defendants' products. The court noted particularly the testimony of a Mr. Ellis, an insulator at the plant, who testified that he used "large quantities" of the defendants' products "through the plant," and that "he knew both Williams and Blair and that he remembered being around them while he was doing asbestos insulation work." *Id.,* at 1497. In contrast, the court held that a directed verdict should have been granted as to Powell's claims, since Ellis

> testified that he knew Mr. Powell and that Powell worked in the green tire repair area. Ellis also testified that he stored asbestos containing materials in this area. *Ellis specifically testified, however, that he could not recall applying Defendant's materials in the presence of Powell.*

*Id.* (emphasis added).

■ If these standards are applied in the present action, they clearly require the court grant the motion for summary judgment. Here, the plaintiff's evidence is much more like that of Powell than that of Blair and Williams in *Blair.* In that case, there was evidence both a co-worker with knowledge of the insulation that (1) the defendants' products were used heavily throughout the plant, and (2) work involving insulation was carried out in the presence of the plaintiffs. Here, in contrast, there is only evidence that some of Owens–Cornings' product was used at various times at the Chevron plant over the period between the 1950s to the 1980s.

There is no evidence that Kaylo formed a majority of the insulation at the plant, or even a significant minority of the insulation. There is no evidence it was used "throughout" the plant. Moreover, of the insulators who were able to express some knowledge that Kaylo was used at the Chevron plant, none of them was able to state they either knew Lyons or did any insulation work with him. At most, to paraphrase the Tenth Circuit in *Blair,* the plaintiff has shown that defendant's product was "somewhere" in a

large industrial plant "at the same time" as the decedent's employment. 962 F.2d at 1496. This does not meet the plaintiff's burden of proving causation.

IT IS ACCORDINGLY ORDERED this 7th day of August, 1998, that the defendant's Motion for Summary Judgment (Dkt. No. 70) is hereby granted.