**Irlene DILLON, Widow and next of kin of Lindell Dillon, deceased, Plaintiff–Appellant,**

*v.*

**FIBREBOARD CORPORATION, Pittsburgh–Corning Corporation, Owens–Illinois, Inc., The Celotex Corporation, Defendants–Appellees.**

**No. 89–6112.**

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1990.

Silas C. Wolf, Jr. of Wolf & Wolf Attorneys, Norman, Okl., for plaintiff-appellant.

Thomas M. Peterson, of Brobeck, Phleger & Harrison, San Francisco, Cal. (John F. McCormick, Jr. and Wm. Gregory James of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., with him on the briefs for defendants-appellants Fibreboard Corp., Pittsburgh–Corning Corp., and Owens–Illinois, Inc., and Joan Godlove, of Roberts, Marrs & Carson, Tulsa, Okl., with him on the brief for defendant-appellee The Celotex Corp.) for defendants-appellees.

Mark H. Iola of Ungerman & Iola of Tulsa, Okl., on the brief for amicus curiae Mark H. Iola.

Before McKAY, LOGAN and ANDERSON, Circuit Judges.

## PER CURIAM.

This case comes to us for review of the grant of summary judgment in favor of defendants in an asbestos products liability action. We reverse.[1]

Lindell Dillon worked as a welder at an oil refinery outside Duncan, Oklahoma from 1955 to 1976. As such, he performed continuing repair and maintenance in virtually every building and structure of the 160–acre refinery facility. Among other tasks, he removed insulation material containing asbestos, he wore protective asbestos clothing and used asbestos blankets as a heat shield during his work, and he was a bystander during asbestos application and removal by asbestos insulation installers. He contracted lung cancer in the summer of 1987 and filed this action shortly thereafter, claiming that his disease was caused by inhalation of asbestos fibers emanating from insulation products manufactured by defendants. The district court granted summary judgment against Mr. Dillon finding that he had presented insufficient evi-

1. During the pendency of this appeal, defendant-appellee Celotex filed a Chapter 11 bankruptcy proceeding, which remains pending. *In re The Celotex Corp.*, Consolidated Nos. 90–10016–8B1 and 90–10017–8B1 (Bankr.M.D.Fla., filed Oct. 12, 1990). Accordingly, the automatic stay provision, 11 U.S.C. § 362, which stays judicial actions "against the debtor," prohibits us from adjudicating the plaintiff-appellant's claims against Celotex. *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 373 (10th Cir. 1990) (inception of case determines applicability of automatic stay). We hereby order abatement of all proceedings in this appeal as to, and only as to, defendant-appellee The Celotex Cor-

poration, pending further order of this court. We are not enjoined from proceeding with this matter, however, as to Celotex' remaining codefendants. *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 818 n. 1 (10th Cir.1990); *Otoe County Nat'l Bank v. W & P Trucking, Inc.*, 754 F.2d 881, 882–83 (10th Cir.1985); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1329–30 (10th Cir.1984).

Plaintiff-appellant and defendant-appellee Celotex shall notify this court forthwith of any termination of the stay resulting from the above-described bankruptcy, or shall file status reports with this court on or before May 15, 1991.

dence of exposure to defendants'[2] products. This appeal followed. Mr. Dillon died during the pendency of the appeal, and his widow, Irlene Dillon, was substituted as plaintiff-appellant.

The district court granted defendants' motion for summary judgment, citing with approval *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986) (applying Maryland law). Mrs. Dillon contends that the district court placed an improperly heightened burden of proof upon her in rendering summary judgment.

We review the summary judgment orders *de novo*, applying the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. However, the non-moving party may not rest on his pleadings; the party must set forth specific facts showing that there is a genuine issue for trial.

*Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106

S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In order to overcome a motion for summary judgment, "Rule 56(e) ... requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[3]

It is acceptable for a party bearing the burden of proof to utilize sufficient circumstantial evidence to support his or her position.

[I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958).

In Oklahoma, a plaintiff must prove three elements in order to succeed in a products liability action: (1) a defect existed in the product (2) which created unreasonable danger for the plaintiff and (3) which caused injury to the plaintiff. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla.1974). In the case at hand, defendants moved for summary judgment, claiming that Mr. Dillon could not meet his burden of proof of causation.[4]

---

**2.** Originally, there were seven defendants to this action: Fibreboard Corp., Owens–Corning Fiberglass Corp., Eagle–Picher Industries, Inc., Pittsburgh–Corning Corp., The Celotex Corp., Ruberoid Corp., and Owens Illinois, Inc. Owens–Corning, Eagle–Picher, and Ruberoid were dismissed after settlement with the plaintiff. Summary judgment was granted as to Fibreboard, Pittsburgh–Corning, Celotex, and Owens Illinois. After this appeal was filed Celotex filed a bankruptcy proceeding, and the action as to Celotex has been stayed. *See* note 1, *supra*. Accordingly, in this order and judgment, we consider only evidence concerning Fibreboard Corp., Pittsburgh–Corning Corp., and Owens–Illinois, Inc., which are collectively referred to herein as the "defendants."

**3.** Defendants claim that the documents submitted to the district court in response to defendants' motion for summary judgment were infirm for various reasons. We have reviewed these documents and defendants' arguments, and we are not persuaded that the documents fail to satisfy the requirements of Federal Rule of Civil Procedure 56(e), pursuant to *Celotex v. Catrett*.

**4.** Mrs. Dillon questions whether the district court erred by enlarging the issue brought to its attention by defendants' motion for summary judgment. Defendants framed the issue to be reviewed as: "Plaintiff has failed to establish product identification." R.Vol. I, tab 29 at 5.

Such burden would be satisfied by proof that Mr. Dillon had sufficient contact with identifiable products manufactured by defendants to cause his lung cancer.

■ The plaintiff in an Oklahoma asbestos products liability case "must prove that the product was the cause of injury; the mere possibility that it might have caused the injury is not enough." *Kirkland,* 521 P.2d at 1363. This causative link must be established through "circumstances which would insure that there was a *significant probability* that [the defendant's] acts were related to the [plaintiff's] injury." *Case v. Fibreboard Corp.,* 743 P.2d 1062, 1067 (Okla.1987) (emphasis added).[5] This appeal hinges on whether Mr. Dillon's proffered evidence rises to the standard required by the Oklahoma courts.

In its final order, the district court expressly equated the Oklahoma and the Maryland standards:

> The Oklahoma law as set forth in *Case,* which requires plaintiff to establish a "significant probability" of the causative link, is strikingly similar to the Maryland law requiring "substantial causation," and thus the Court finds the well-reasoned and thoroughly analyzed [*Lohrmann*] decision highly persuasive.

Order at 5-6. However, the district court went on to utilize the Oklahoma standard while approving the tripartite analysis—frequency, regularity, and proximity—enunciated by the Fourth Circuit in *Lohrm-*

ann. *See Lohrmann,* 782 F.2d at 1163. The district court wrote: "To establish a reasonable inference of the significant probability of a causative link between plaintiff's injuries and the manufacturers' products, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Order at 5-6. The first half of this sentence applies the Oklahoma standard, and the second recites the elements which the *Lohrmann* court utilized to determine whether the standard had been met. Mrs. Dillon is incorrect that this order of the court applied a stricter standard than that of Oklahoma. The district court applied the Oklahoma standard while approving the Fourth Circuit's well-formulated method for analysis of the facts under that standard.

However, in *de novo* review, we must examine whether the district court was correct in its conclusion that Mr. Dillon did not meet the Oklahoma standard. We have carefully reviewed the entire record. In response to defendants' motions for summary judgment, Mr. Dillon submitted deposition testimony from an insulator at the Duncan refinery specifically identifying each of defendants' products at the refinery, and his own deposition testimony that he handled all the products with which the insulators worked, either during repairs or tear-out procedures.[6] This testimony

The district court granted the motion, based on its judgment that Mr. Dillon had failed to produce sufficient evidence to support the causation element of an asbestos products liability suit. Because, as we have set forth in this opinion, product identification is one element of causation, the district court's order granting summary judgment addressed the defendants' contention. We find no error in the fact that the district court did not mimic defendants' choice of language in characterizing the issue before it.

5. Defendants point out that in *Lohrmann,* 782 F.2d at 1162, the Fourth Circuit applied Maryland's "substantial causation" standard, and that in *Menne v. Celotex Corp.,* 861 F.2d 1453, 1459 (10th Cir.1988), this circuit applied Nebraska's "substantial factor" standard. However, the Oklahoma court has explicitly provided us with a specific standard by which to judge asbestos

liability causation questions, and that standard is "significant probability." While the district court in this case found the Oklahoma and the Maryland standards to be "strikingly similar," *Dillon v. Fibreboard Corp.,* No. CIV-87-1682-P, slip op. at 5 (W.D.Okla. Dec. 2, 1988) ("Order"), it purported to apply the Oklahoma standard. We will not dilute the distinction among these standards, selected after careful consideration by the courts of the respective states. Because the Oklahoma Supreme Court has addressed this issue directly, we will rely solely on the standard chosen by that court, that of "significant probability."

6. In his deposition, Mr. Dillon testified:

I know we tore off block insulation in asbestos load [sic] from where we would salvage pipe in the shop. And actually when you got through, you'd be covered with white, just

places defendants' products at the Duncan refinery and places Mr. Dillon in repeated, regular, and direct physical contact for over twenty years with all asbestos products installed at the refinery.

While the district court maintained that this evidence, viewed most favorably to plaintiff, "at best raised the possibility that his injuries were caused by defendants' products," Order at 8, and characterized it as raising "mere speculation or conjecture" of causation, *id.*, we disagree. Because the insulator's testimony specifically identified defendant's products as present at the refinery, and because Mr. Dillon himself testified that he physically handled all the kinds of asbestos insulation products installed at the refinery, Mr. Dillon offered rebuttal evidence which supports a "significant probability" that Mr. Dillon's illness was caused by defendants' products, sufficient to meet the burden for overcoming defendants' motion for summary judgment under Oklahoma law.

We express no opinion as to the remaining issues in this case, limiting our review to the narrow issue before the district court in defendants' motion for summary judgment. As to defendants Fibreboard Corp., Pittsburgh–Corning Corp., and Owens–Illinois, Inc., *see* notes 1 and 2 *supra*, the judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and this matter is REMANDED to the district court for further proceedings.

---

like you'd had flour throwed on you, and breathing it. And you'd wash your nose out to where you could breathe.

. . . .

I probably tore off every brand that—Well, I know I have. Every brand that was in the refinery. So anything that was in that refinery, I come in direct [contact with.]

R.Vol. I, tab 44, Deposition of Lindell Edward Dillon, August 22, 1988 [at 59].

