**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO. et al., Defendants.**

No. 94–2202–JWL.

United States District Court, D. Kansas.

Jan. 8, 2002.

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Scott B. Hall, Humphrey, Farrington, McClain & Edgar, Independence, MO, Gregory Leyh, Kansas City, MO, for David Burton.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Stanley D.

Davis, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Stephen B. Yeager, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Randal S. Baringer, Jones, Day, Reavis & Pogue, Cleveland, OH, Roger D. Stanton, Berkowitz, Feldmiller, Stanton Brandt, Williams & Stueve, LLP, Prairie Village, KS, Catherine L. Bjorck, Jones, Day, Reavis & Pogue, Dallas, TX, for R.J. Reynolds Tobacco Company.

James D. Griffin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, James M. Warden, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Frank C. Woodside, III, Mary-Jo Middelhoff, Dinsmore & Shohl LLP, Cincinnati, OH, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke LLP, New York City, Roger W. Warren, Sanders Conkright & Warren LLP, Kansas City, MO, for American Tobacco Co. and Brown and Williamson Tobacco Corp.

### MEMORANDUM & ORDER

LUNGSTRUM, Chief Judge.

Plaintiff filed this personal injury products liability action against defendants claiming that defendants' cigarettes caused his peripheral vascular disease and addiction. Plaintiff has asserted defective design and failure-to-warn claims under a theory of strict product liability as well as negligence. He has also asserted fraudulent concealment and conspiracy claims. This matter is presently before the court on defendants' joint motion for summary judgment (doc. # 462) and defendant Brown & Williamson's motion for summary judgment (doc. # 468). As set forth in more detail below, both motions are denied in their entirety.

## I. Facts

As the vast majority of defendants' arguments on summary judgment are legal arguments, a detailed factual summary is unnecessary. In brief, plaintiff began smoking Camel and Lucky Strike cigarettes-cigarettes manufactured by defendants-in about 1950. He claims that he became addicted to cigarettes in 1951 or 1952. Plaintiff attempted to quit smoking several times, but was not successful until the late 1990s. Plaintiff was diagnosed with peripheral vascular disease (PVD) in July 1993, a disease that ultimately required the amputation of plaintiff's legs. Plaintiff claims that his PVD was caused by defendants' products. Additional facts will be provided as they pertain to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, depo-

sition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Defendants' Joint Motion for Summary Judgment

In their joint motion, defendants move for summary judgment on the merits of plaintiff's design defect, fraudulent concealment and failure-to-warn claims. Defendants further contend that summary judgment is appropriate on all of plaintiff's claim as he has failed to come forward with sufficient evidence of causation. Finally, defendants maintain that plaintiff's claims based on his alleged addiction are barred by the statute of limitations. As set forth below, the motion is denied in its entirety.[1]

### A. Defective Design

Plaintiff alleges that defendants' cigarettes are defectively designed because they cause PVD. Defendants move for summary judgment on plaintiff's defective design claims on the grounds that plaintiff has failed to identify any specific defect in the cigarettes that he smoked. *See Bur-*

---

1. While defendants, in their motion, mention in passing the merits of plaintiff's conspiracy claim (*i.e.,* "[Plaintiff] has not identified any unlawful overt acts or any evidence of a meeting of the minds between defendants and any other person or entity to commit any unlawful acts."), defendants apparently abandoned that argument for summary judgment purposes in their reply brief, arguing only that plaintiff's conspiracy claim fails because his underlying claims fail. Thus, the court does not address the merits of plaintiff's conspiracy claim.

Moreover, while defendants do not challenge the merits of plaintiff's claim for punitive

damages in their motion (they argue only that the claim fails because plaintiff's substantive claims fail), defendants purport to challenge the merits of the punitive damages claim in their reply brief (*i.e.,* "Even if plaintiff's underlying claims are not dismissed, his punitive damages claim must be dismissed for failure to meet the stringent standard that is applied independently to it."). Of course, it is well settled in this district that a court will not consider issues raised for the first time in a reply brief. *See Anderson v. Farmland Indus., Inc.,* 70 F.Supp.2d 1218, 1228 (D.Kan. 1999) (and cases cited therein).

*ton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1522 (D.Kan.1995) (denying defendants' motion to dismiss plaintiff's design defect claims but cautioning plaintiff that, after conducting discovery on his claims, he would be required to specifically identify what aspect of defendants' products was defectively designed). As set forth more fully below, defendants' motion is denied with respect to plaintiff's defective design claims.

Any analysis of plaintiff's defective design claims must begin with the Kansas Supreme Court's decision in *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 886 P.2d 869 (1994). In *Jenkins*, the plaintiff filed a products liability suit against the defendants alleging that his long-term use of the herbicide chemical commonly known as 2,4–D caused or contributed to his development of non-Hodgkin's lymphoma. *See id.* at 604, 886 P.2d 869. The trial court ruled that if the plaintiff proved that defendants' products cause cancer, plaintiff would have established a prima facie strict liability claim without having to prove a more specific defect. *Id.*

■ On appeal, the Kansas Supreme Court reversed the trial court's decision and held that the plaintiff could not prevail on his claim on proof of causation alone. *See id.* at 634, 886 P.2d 869. Indeed, the court specifically rejected the notion that "the mere fact of an injury implies a design defect." *See id.* at 635, 886 P.2d 869 ("Inferring a defect from the fact of the injury, particularly where, as here, the product was exactly what the defendants intended ... is unsuitable."). In short, the court held that some specific defect must be established to prove a strict liability claim. *See id.* at 635–37, 886 P.2d 869 ("[T]here must be a specific claim concerning what aspect of the design was defective for a plaintiff to prevail on a strict liability design defect claim.").

■ Based on the teachings of *Jenkins*, defendant contends that summary judgment is appropriate because plaintiff has failed to identify any specific defect in defendants' products and, instead, asserts only that defendants' products are defective because they cause PVD. Plaintiff's experts, however, have identified the specific ingredients contained in cigarettes that allegedly cause PVD (*i.e.*, nicotine and carbon monoxide).[2] In other words, according to plaintiff, the specific design defect in defendants' products is that the products deliver harmful quantities of nicotine and carbon monoxide.[3]

2. Defendants contend that plaintiff has not offered admissible evidence on this issue because he refers the court only to unsworn expert reports. The court agrees that plaintiff could have marshalled his evidence more effectively in response to defendants' motion for summary judgment. Moreover, the court typically is not inclined to comb the summary judgment record searching for evidence to support the plaintiff's claims. Nonetheless, where, as here, a plaintiff has cited to pertinent evidence, albeit in an unadmissible form, the court is willing to look to the summary judgment record to ascertain whether similar, admissible evidence exists to support the plaintiff's claims. Here, the court has found ample evidence in the summary judgment record suggesting that defendants' products contain harmful levels of nicotine and carbon monoxide.

3. In his papers, plaintiff also argues that alternative methods were available to defendants to reduce the harmful potential of their products (*i.e.*, the use of filters and the development of virtually nicotine-free cigarettes). Defendants object to plaintiff's reference to these alternative designs as plaintiff failed to mention these designs in the pretrial order or in his responses to interrogatories. As plaintiff is not required under Kansas law to submit proof of safer alternative designs, *see Jenkins*, 256 Kan. at 636, 886 P.2d 869, the court need not address the issue in connection with the summary judgment briefing and plaintiff survives summary judgment even in the absence of any evidence of alternative designs.

■ While defendants suggest that plaintiff, to survive summary judgment, must point to a specific design flaw in defendants' products not found in cigarettes generally or that defendants' products pose a danger greater than that inherent in cigarettes generally, Kansas courts have not adopted such a requirement and the *Jenkins* decision simply does not go as far as defendants suggest. In the absence of such a requirement, plaintiff's evidence is sufficient to allow his design defect claims to survive summary judgment on the theory that defendants' products, as designed, were unreasonably unsafe. *See Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 846–48 (8th Cir.2001) (in the absence of a state law requirement that plaintiff show that a product poses a danger not posed by similar products, plaintiff's evidence that defendant's cigarette was defectively designed because the cigarette delivered harmful amounts of nicotine and carcino-

gens was sufficient to survive summary judgment). *See also Smith v. Minster Mach. Co.*, 669 F.2d 628, 633 (10th Cir. 1982) ("[I]f a product is found to be in a defective condition unreasonably dangerous to the user, the manufacturer is not to be excused from liability simply because other manufacturers are producing similar products").

### B. Fraudulent Concealment

■ In the pretrial order, plaintiff alleges that defendants fraudulently concealed from plaintiff the health risks of cigarette smoking, including the addictive nature of cigarettes and the fact that smoking can cause PVD.[4] Defendants maintain that summary judgment is warranted with respect to plaintiff's fraudulent concealment claim because plaintiff has failed to set forth with particularity any specific facts that defendants concealed from the medical or scientific community[5]

Whether plaintiff will be permitted to proffer such evidence at trial, however, is an issue that the court will address in connection with the trial. While the court would not necessarily expect such information to be contained in the pretrial order, the court will consider whether the information should have been produced in response to relevant discovery requests and whether defendants were otherwise on notice that plaintiff intended to raise these alternative designs in connection with his design defect theory.

4. Defendants contend that plaintiff has abandoned any claim that defendants fraudulently concealed information about nicotine or "addiction" because plaintiff failed to include these allegations in the pretrial order. The court rejects this argument. A review of the pretrial order, taken as a whole, reveals that plaintiff's "addiction" claims are still very much a part of this case. Moreover, with respect to the specific paragraph concerning plaintiff's fraudulent concealment claim, plaintiff states that defendants "fraudulently concealed the health effects of cigarette smoking." The court concludes that plaintiff's reference to "health effects" is simply a short-

hand for PVD and addiction. While plaintiff certainly could have been more clear in drafting this portion of the pretrial order, the court nonetheless determines that the issue has been preserved, particularly because plaintiff has long claimed in this litigation that defendants fraudulently concealed the addictive nature of cigarettes.

5. In a footnote to the text of their memorandum, defendants state that the "lack of specificity [in plaintiff's complaint] did not comport with Federal Rule [of Civil Procedure] 9(b)" and that the requirements of Rule 9(b) are "rigorously enforced" by the Tenth Circuit. To the extent defendants are suggesting that plaintiff's fraudulent concealment claim should be stricken for failure to comply with Rule 9(b), the court's rejects this belated challenge. *See Davsko v. Golden Harvest Prods., Inc.*, 965 F.Supp. 1467, 1473–74 (D.Kan. 1997) (as purpose of Rule 9(b) is to allow defendants to prepare an adequate responsive pleading to plaintiff's complaint, defendants not permitted to challenge complaint under Rule 9(b) more than one year after answering complaint through summary judgment pro-

and because the evidence establishes that defendants did not conceal material information from the medical or scientific community. For the reasons set forth below, defendants' motion is denied as to this claim.

In their motion, defendants contend that plaintiff has failed to identify any specific information that defendants concealed from the medical or scientific community. Defendants further maintain that the uncontroverted evidence demonstrates that defendants did not conceal material information that was not already known to the medical or scientific community. According to defendants, plaintiff concedes that the medical and scientific communities, during the relevant time period, had relevant information concerning the health risks of cigarette smoking. In response, plaintiff emphasizes that the relevant issue (and one not addressed by defendants' motion) is whether defendants concealed *from plaintiff* the health risks of smoking.

Indeed, defendants' arguments are based on a fundamental misunderstanding of this court's February 1996 order regarding defendants' motion to dismiss plaintiff's fraudulent concealment claim. *See Burton v. R.J. Reynolds Tobacco Co.,* 916 F.Supp. 1102 (D.Kan.1996). By way of background, defendants moved to dismiss plaintiff's fraudulent concealment claim on the grounds that the claim was essentially duplicative of plaintiff's failure-to-warn claim. *See id.* at 1103–04. In distinguishing the case on which defendants principally relied, *Hamner v. BMY Combat Sys.,* 869 F.Supp. 888 (D.Kan.1994), the court identified various mediums that defendants could have utilized-other than placing warning labels on the cigarette package-to advise the public about the health risks

associated with cigarette smoking. *See id.* at 1104. Specifically, the court noted:

Plaintiff alleges that the defendants should have disclosed the hazards of smoking documents by their scientific studies to the general public. Defendants could have accomplished this by disclosing their medical and scientific studies to the medical community for publication or by publishing the information themselves. Defendants had numerous mediums-other than placing warnings on the product itself as in *Hamner*-to tell the public of the dangers of smoking. Thus, this case presents a factual context in which the claims are made that differs from the context in which the claims were made in *Hamner.*
*Id.*

Defendants, having taken out of context and misconstrued the court's statements, now assert that the court has "ruled" that the legal issue concerning plaintiff's fraudulent concealment claim is "whether defendants concealed information ... that should have been disclosed to the medical community." The court, of course, made no such ruling. In any event, the point of the court's example was not just that the medical community have knowledge concerning the health risks associated with smoking but that defendants provide such knowledge to the medical community for the purpose of disseminating that information *to the general public.* Defendants' motion simply does not analyze the record evidence in terms of what information (during the relevant time period) was readily available to the general public, including plaintiff, concerning the health risks associated with smoking.

■ In their reply brief, then, defendants assert that "even if concealment

cess); *accord United National Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 38–39 (N.D.Ill. 1984) (where defendants had a sufficient opportunity to respond to plaintiffs' charges as

contemplated by Rule 9(b), defendants not permitted to raise Rule 9(b) objection at the summary judgment stage).

from plaintiff were the issue," summary judgment is nonetheless appropriate because plaintiff has not presented any evidence that there is any information about PVD or addiction that could not have been discovered by the exercise of reasonable diligence.[6] In other words, according to defendants, because it is undisputed that the medical and scientific communities had information at all relevant times about the relationship between smoking and PVD and smoking and addiction, plaintiff could have discovered it. Defendants, however, offer no evidentiary support for their bald assertion (an assertion that is a quintessential argument for the jury) that plaintiff could have discovered such information. Defendants' motion on this basis, then, is denied.

For the foregoing reasons, defendants' motion for summary judgment is denied and a trial is required on plaintiff's fraudulent concealment claim.

## C. Failure to Warn

In the pretrial order, plaintiff alleges that defendants, prior to 1969,[7] should have warned the public, including plaintiff, that cigarettes caused PVD and are addicting. In their joint motion, defendants maintain that summary judgment is appropriate on plaintiff's remaining failure-to-warn claims because plaintiff has no admissible evidence of a feasible, adequate and effective warning. Defendants also contend that summary judgment is warranted because plaintiff cannot prove that any alleged failure to warn caused his injuries. Specifically, defendants urge that the evidence is "overwhelming" that plaintiff "did not heed warnings concerning the health effects of cigarettes and would not have changed his behavior if he had additional warnings." For the reasons set forth below, defendants' motion is denied.[8]

■ During the discovery process, plaintiff identified two warnings which he contends should have been given by defendants prior to 1969. Plaintiff's first proposed warning reads as follows:

WARNING: SMOKING CAMEL AND LUCKY STRIKE CIGARETTES MAY CAUSE PERIPHERAL VASCULAR

---

**6.** Defendants also assert in their reply brief that summary judgment is appropriate because plaintiff has failed to meet his burden of proving his fraudulent concealment claim by "clear and convincing" evidence. *See Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman,* 267 Kan. 245, 260, 978 P.2d 922 (1999) (fraudulent concealment claim must be established through clear and convincing evidence). The court disagrees and defendants' motion for summary judgment on this basis is denied. Evidence is clear if it is certain, unambiguous, and plain to the understanding, and is convincing if it is reasonable and persuasive enough to cause the trier of fact to believe it. *See Ortega v. IBP, Inc.,* 255 Kan. 513, 528, 874 P.2d 1188 (1994) (citing *Chandler v. Central Oil Corp.,* 253 Kan. 50, 58, 853 P.2d 649 (1993)). Plaintiff's evidence with respect to his fraudulent concealment claim meets this test.

**7.** The court previously dismissed plaintiff's post–1969 failure-to-warn claims as those claims are preempted by the Federal Cigarette Labeling and Advertising Act of 1965, as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340. *See Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. 1515, 1519–21 (D.Kan.1995) (relying on *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

**8.** Defendants raise a third argument in support of their motion for summary judgment on plaintiff's failure-to-warn claims-that plaintiff's claims must fail as plaintiff "has no warnings expert to support any failure-to-warn theory." Defendants concede in their reply brief, however, that Kansas courts have not required expert testimony to establish a failure-to-warn claim.

DISEASE. PERSONS SUFFERING FROM THIS DISEASE CAN LOSE THEIR LIMBS!

Plaintiff's second proposed warning reads as follows:

WARNING: SMOKING CAMEL AND LUCKY STRIKE CIGARETTES IS A DRUG ADDICTION AND LEADS TO A LOSS OF CONTROL OVER YOUR OWN DECISIONS AND CHOICES!

According to defendants, plaintiff's proposed warnings are insufficient because plaintiff cannot "simply draw up a warning limited to the dangers involved ... and argue that the warning *should* have been conveyed." This quotation from defendants' papers is taken from Judge Belot's decision in *Meyerhoff v. Michelin Tire Corp.*, 852 F.Supp. 933, 947 (D.Kan.1994). Defendants, however, have ignored the rest of Judge Belot's statement:

In this court's view, a person cannot, after suffering an accident, simply draw up a warning limited to the dangers involved in that accident and argue that that warning *should* have been conveyed by the manufacturer or seller without first also establishing that that warning is adequate and that it actually *could* have been communicated in the manner proposed.

*Meyerhoff,* 852 F.Supp. at 947 (emphasis in original). In *Meyerhoff,* after a full trial on the merits, Judge Belot concluded that because plaintiffs' own expert essentially conceded that his proposed warning was not adequate or feasible (and in the absence of any other evidence supporting plaintiff's claim that the proposed warning was adequate and feasible), defendants were entitled to judgment as a matter of law. *See id.* at 947–48. By contrast, here there is evidence in the record before the court from which a reasonable jury could conclude that plaintiff's proposed warnings would have been adequate, feasible and

effective. Summary judgment on this point is denied.

The court turns, then, to defendants' argument that plaintiff's failure to heed other warnings precludes, as a matter of law, a finding that any warning defect in their products was a proximate cause of plaintiff's injuries. According to defendants, plaintiff continued to smoke for more than 40 years despite receiving numerous warnings from a variety of sources about the health effects of cigarettes. Defendants argue, then, that no additional warnings from defendants would have caused plaintiff to cease smoking and that no reasonable jury could conclude that plaintiff would have heeded any additional warning.

As defendants acknowledge, this is an argument that the court has previously addressed, albeit prior to full discovery. *See Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. at 1526–27. In that regard, the court stated:

Granted, the fact that plaintiff failed to heed any of the warnings that were given to him is strong evidence that additional warnings would not have been effective. However, without even knowing what those additional warnings might have been, this court is loathe to rule as a matter of law that additional warnings or information would not have been heeded by plaintiff. In fact, if it is determined that additional warnings were necessary, and plaintiff asserts that additional warnings would have been heeded (which he did in his deposition), such a determination is most probably a fact question to be determined by the jury.

*Id.* at 1527. Defendants have now presented additional evidence to support their theory that plaintiff would not have heeded any additional warning and they contend that summary judgment is appropriate be-

cause the "court's earlier ruling was based on the limited factual record on that issue developed at that time, which consisted primarily of the deposition testimony of Mr. Burton." As defendants recognize, however, regardless of the substance and "weight" of their evidence, plaintiff testified in his deposition that he would have heeded earlier warnings concerning addiction and the risk of developing PVD. Defendants essentially are asking the court to discredit plaintiff's own testimony in light of the "overwhelming" evidence that contradicts that testimony. Any assessment of plaintiff's credibility, however, is a task for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

■ In any event, the mere fact that plaintiff received numerous warnings from other sources about the general health risks of smoking cigarettes is certainly not the equivalent of receiving warnings from defendants-as the manufacturers of the cigarettes smoked by plaintiff-concerning the specific risks of smoking, including addiction and PVD. For example, defendants highlight that plaintiff's vascular surgeon told plaintiff in the early 1990s that his condition was caused by smoking and another doctor told plaintiff during that same time frame that plaintiff would lose his legs if he continued to smoke. Plaintiff's

evidence, however, suggests that defendants knew *in the early 1950s* that cigarette smoking had at least some connection to the development of PVD. This is the same time period when plaintiff began smoking. Thus, factual issues exist with respect to whether defendants had knowledge of such a connection before plaintiff even began to smoke (or before he became addicted to cigarettes) and whether such knowledge, if imparted to plaintiff at that time, would have changed plaintiff's behavior. Similarly, there are factual questions regarding when defendants realized the addictive nature of nicotine and whether plaintiff would have modified his behavior if defendants, at the time they realized the addictive nature of nicotine, would have warned the public about addiction.

For all of the foregoing reasons, defendants' motion for summary judgment on plaintiff's pre 1969 failure-to-warn claims is denied.[9]

### D.   Causation

Defendants also contend that summary judgment is mandated on all of plaintiff's claims as plaintiff cannot establish general causation (that cigarette smoking causes PVD) or specific causation (that plaintiff's cigarette smoking caused his PVD). As set forth more fully below, defendants' motion regarding causation is denied.

Defendants' initial argument regarding general causation is that plaintiff's primary testifying expert concerning general causation, Dr. Cossman, is somehow unqualified to render such an opinion because he is "only" a vascular surgeon and is not a

---

9.   Throughout their papers, defendants reference a decision from the Western District of Missouri in which the district judge dismissed on summary judgment a plaintiff's failure-to-warn claims in a related context. *See Smith v. Brown & Williamson Tobacco Corp.*, Case No. 96–0459–CV–W–3, 1999 U.S. Dist. LEXIS 21990, *12–15 (W.D.Mo. Jan. 29, 1999). De-

fendants suggest that this decision is binding "authority" and criticizes plaintiff for not distinguishing the facts of the *Smith* case from the facts present here. Of course, the *Smith* case is in no way binding on this court and the court believes that, based on the facts presented here, summary judgment is inappropriate.

"scientist" or an "epidemiologist." Federal Rule of Evidence 702 allows expert testimony, by opinion or otherwise, if the witness is "qualified as an expert by knowledge, skill, experience, training, or education" and his specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The court has a "gatekeeping" obligation to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The rejection of expert testimony is the exception rather than the rule. *See* Fed.R.Evid. 702 advisory committee notes.

▆ The Tenth Circuit has held that "[a]s long as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *See Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 969 (10th Cir.2001) (quoting *Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1520 (10th Cir.1996) (quoting *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir.1991))). The dispositive question becomes, therefore, whether the issue of general causation is "within the reasonable confines" of Dr. Cossman's subject area. *See id.* Defen-

dants have not shown that the issue is not within the reasonable confines of Dr. Cossman's subject area. Thus, so long as it is established at trial that Dr. Cossman's opinions and assessments flow from his education and experience as a vascular surgeon, he will be permitted to testify on the issue of general causation.[10]

Defendants also suggest that Dr. Cossman's testimony actually negates any inference of a causal connection between cigarette smoking and the development of PVD. In support of their argument, defendants have taken out of context isolated portions of Dr. Cossman's testimony and excerpts from certain peer-reviewed articles relied on by Dr. Cossman to attempt to suggest that Dr. Cossman concedes that the cause of PVD is a "mystery;" the effect of smoking on the development of PVD is "uncertain;" and the development of PVD is "complicated" and subject to "multiple risk factors." None of these isolated statements is sufficient for the court to conclude as a matter of law that Dr. Cossman's testimony essentially negates general causation. This is particularly true in light of the fact that the record before the court contains ample evidence from which a jury could readily conclude that cigarette smoking causes or contributes to the development of PVD. *See, e.g.,* Affidavit of David Burns ¶ 7; Burns Depo. p. 178–180; Cossman Depo. p 62–63; Harris Depo. p. 315.[11]

10. Defendants have filed a joint motion to exclude expert testimony (which is still pending before the court) in which they argue, *inter alia,* that Dr. Cossman lacks the necessary qualifications to opine on general causation as he is a vascular surgeon as opposed to a scientist or epidemiologist. For the same reasons as set forth here, then, and as the court will more fully explain in its order resolving the motion to exclude, defendants have not shown for *Kumho Tire* purposes that Dr. Cossman's opinion regarding general cau-

sation is not within the reasonable confines of his subject area.

11. The court here and in connection with defendant Brown & Williamson's motion for summary judgment references the testimony of plaintiff's experts on certain issues. The court acknowledges that defendants have filed a joint motion to exclude the testimony of these experts, a motion that is still pending before the court. Having reviewed the testimony of these witnesses and having reviewed the relevant portions of defendants' motion to

Next, defendants argue that plaintiff has "no evidence" that cigarette smoking caused his PVD. This contention lacks merit. Dr. Cossman, for example, competently testified that cigarette smoking caused (or at the very least contributed significantly to) plaintiff's PVD. Similarly, Dr. Harris, one of plaintiff's treating physicians, testified in her deposition that plaintiff's smoking caused or contributed to his PVD.[12] In any event, defendants' primary argument regarding specific causation is that in light of all the various known risk factors for PVD that plaintiff had, he simply cannot prove that cigarette smoking (as opposed to any one of the other risk factors) caused plaintiff's PVD. The problem with this argument, however, is that it ignores the fact that Kansas law permits a finding of specific causation upon a showing that the product "caused *or contributed to*" a plaintiff's injuries. *See* PIK–Civil 3d § 128.18 (emphasis added) (specific language cited with approval in *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan. 443, 464, 14 P.3d 1170 (2000)). Thus, plaintiff does not need to establish that cigarette smoking was the sole cause of his PVD so long as he presents sufficient evidence from which a reasonable jury could conclude that his cigarette smoking "contributed to" his PVD. In other words, plaintiff is not required to eliminate all other factors in order for the jury to find in his favor on the causation issue. Defendants' motion regarding specific causation is denied.

### E.  Statute of Limitations

Plaintiff contends that his addiction to nicotine is a separate injury that he has sustained as a result of smoking cigarettes. Defendants contend that any claim for injury based on plaintiff's alleged addiction to smoking is barred by the statute of limitations. Specifically, defendants maintain that plaintiff knew he was addicted to cigarettes and had injury (cravings and irritability when he attempted to quit smoking) more than two years prior to the time he filed his lawsuit. *See* K.S.A. § 60–513 (two year statute of limitations for personal injury actions not arising on contract). Plaintiff, on the other hand, asserts that he did not realize that he was addicted to cigarettes before May 1992 (two years before he filed suit).

As both parties concede, the relevant issue under Kansas law is when the fact of injury became "reasonably ascertainable" to the injured party-not when the injured party had knowledge of the fact of injury. *See* K.S.A. 60–513(b). While defendants contend that plaintiff's addiction was "certainly reasonably ascertainable based on his physical symptoms" by 1965 at the latest, a reasonable jury could find otherwise based on the evidence before the court. As questions of fact remain in dispute concerning when the fact of injury was reasonably ascertainable to plaintiff, defendants' motion must be denied with respect to this issue. *Cf. Smith*

---

exclude, the court concludes that the specific testimony referenced by the court is admissible for purposes of *Kumho Tire*. The court will elaborate on its reasoning in its forthcoming order resolving the motion to exclude.

12. Dr. McLean, another treating physician, testified by affidavit that in his opinion, to a reasonable degree of medical certainty, the cause of plaintiff's PVD was cigarette smoking. Defendant objects to this testimony as

Dr. McLean was never identified as a testifying expert. As plaintiff survives summary judgment on the specific causation issue even in the absence of Dr. McLean's testimony, the court need not address defendant's objection at this juncture. If, however, Dr. McLean's records contain the conclusion that cigarette smoking caused plaintiff's PVD, then the court, consistent with its practice, would permit Dr. McLean to testify as such at trial.

*v. Brown & Williamson Tobacco Corp.,* 1999 U.S. Dist. LEXIS 21990, Case No. 96–0459–CV–W–3, at *33–34, *48 (W.D.Mo. Jan. 29, 1999) (dismissing addiction claims under Missouri's five-year statute of limitations where plaintiff-more than five years prior to filing suit-quit smoking, became "extremely ill," *and physician advised her that she was suffering from nicotine withdrawal*); *see also Olson v. State Highway Comm'n of Kansas,* 235 Kan. 20, 27–28, 679 P.2d 167 (1984) ("We have repeatedly held that where the evidence is in dispute as to when the fact of injury first became reasonably ascertainable to plaintiffs, it is an issue for determination by the trier of fact.").

## IV. Defendant Brown & Williamson's Motion for Summary Judgment

Brown & Williamson argues in its summary judgment motion that there is an absence of evidence indicating that plaintiff's smoking Lucky Strike cigarettes caused his PVD. Plaintiff argues in his response that Brown & Williamson has not presented sufficient evidence to shift the burden to plaintiff to come forward with evidence showing the existence of a genuine question of fact for trial, that plaintiff has presented enough evidence of his use of Lucky Strike cigarettes to survive summary judgment, and that plaintiff has alleged that Brown & Williamson and R.J. Reynolds Tobacco Company ("R.J. Reynolds") entered into a civil conspiracy, thereby making Brown & Williamson liable for the harm caused by all Camel cigarettes that he smoked.

### A. Evidence of Plaintiff's Use of Lucky Strike Cigarettes

Evidence of plaintiff's use of Lucky Strike cigarettes consists of deposition testimony of plaintiff in November 1994, an affidavit by plaintiff made on January 12, 1995, and deposition testimony of other witnesses about plaintiff's smoking habits. In his affidavit, plaintiff states that he began smoking Camel and Lucky Strike cigarettes in approximately 1950 and "smoked Camel and Lucky Strike cigarettes in each year thereafter until 1993." In his deposition, plaintiff testified that he always tried to smoke Camel cigarettes and smoked Lucky Strike cigarettes only when he could not get Camel cigarettes. Plaintiff agreed that, some years, he did not smoke Lucky Strike cigarettes at all and he could not recall the first or last time that he smoked Lucky Strike cigarettes. Plaintiff also testified that he smoked at least one pack of cigarettes per day during the approximately 43 years that he smoked.[13]

---

13. Brown & Williamson points out the inconsistency between the statement in the affidavit and plaintiff's deposition testimony. To the extent that they are inconsistent, the court will disregard the affidavit for the purpose of deciding summary judgment. The statement in the affidavit is nothing more than a brief synopsis of the facts serving as an introduction to an affidavit regarding another matter. To the extent that plaintiff now advances the one sentence in the affidavit as evidence contrary to plaintiff's deposition testimony, the court will disregard the inconsistency as an effort to create a sham issue of fact. In *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir. 1986), the Tenth Circuit acknowledged that there was "authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements," but held that in cases where the affidavit "constitutes an attempt to create a sham fact issue," a court may disregard the affidavit. *Id.* at 1237. According to the court, the factors relevant to the existence of a sham fact issue include "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."

The only additional evidence of plaintiff smoking Lucky Strike cigarettes comes from the deposition testimony of Ora Burton, plaintiff's wife. Mrs. Burton testified that she saw plaintiff smoke Lucky Strike cigarettes. Her testimony, however, does not indicate how many Lucky Strike cigarettes plaintiff smoked.

Brown & Williamson points to the deposition testimony of a number of witnesses who testified that they never saw plaintiff smoke Lucky Strike cigarettes. To the extent that the testimony of these witnesses may be inconsistent with that of plaintiff and his wife, it merely creates a question of fact to be resolved at trial.

*B. Analysis*

Evidence about the number of Lucky Strike cigarettes smoked by plaintiff is limited. The evidence indicates that plaintiff preferred to smoke Camel cigarettes and would only smoke Lucky Strike cigarettes when Camel cigarettes were not available. There is no evidence in the record, however, indicating how often Camel cigarettes were unavailable and plaintiff was forced to smoke his second choice of cigarettes, Lucky Strike.[14]

Brown & Williamson points to an absence of evidence of causation in its summary judgment motion. Brown & Williamson need not come forward with evidence showing a lack of causation to meet its summary judgment burden. Instead, Brown & Williamson meets its summary judgment burden by simply pointing out a lack of evidence supporting an essential element of plaintiff's claim, that the use of Lucky Strike ciga-

rettes caused plaintiff's PVD. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998); *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 235, 552 P.2d 938 (1976) ("Regardless of the theory upon which recovery is sought for injury in a products liability case, proof that a defect in the product caused the injury is a prerequisite to recovery."). The burden thereby shifts to plaintiff to set forth specific facts that would be admissible in evidence in the event of trial and from which a rational trier of fact could find for plaintiff. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adler,* 144 F.3d at 670.

To prevail in a products liability case, a plaintiff must prove that the product is the actual and proximate cause of the plaintiff's injury. *Wilcheck,* 220 Kan. at 235, 552 P.2d 938. According to Kansas case law, an act or product is the actual cause of the plaintiff's injury if the act or product "is a substantial factor in bringing about the harm [to the plaintiff]." *Roberson v. Counselman,* 235 Kan. 1006, 1012, 686 P.2d 149 (1984); *Donnini v. Ouano,* 15 Kan.App.2d 517, 520, 810 P.2d 1163 (1991); Restatement (Second) of Torts § 431. Proximate causation requires that the injury be reasonably foreseeable. *Wilcheck,* 220 Kan. at 235, 552 P.2d 938. Questions of actual and proximate cause are questions of fact for a jury, unless "all the evidence relied upon by a party is undisputed and susceptible of only one inference." *Cullip ex rel. Pitts v. Domann ex rel. Domann,* 266 Kan. 550, 556, 972 P.2d 776 (1999). This court, therefore,

---

*Id.* In this case, plaintiff was thoroughly examined and cross-examined about his use of Lucky Strike cigarettes. Plaintiff was not without pertinent information at his deposition and the affidavit does not purport to be based on newly discovered evidence or to be

an attempt to clarify confusion in his deposition testimony.

**14.** Plaintiff's statement in the 1995 affidavit also does not quantify how many Lucky Strike cigarettes he smoked.

will not grant summary judgment on the basis of causation unless plaintiff has produced no evidence from which a reasonable jury could conclude that his smoking Lucky Strike cigarettes was an actual and proximate cause of his PVD.

██ The court concludes that, although the evidence is thin, plaintiff has produced enough evidence to survive summary judgment. Plaintiff has come forward with evidence showing that he was exposed to cigarette smoke from both Camel and Lucky Strike cigarettes. There is evidence in the record indicating that smoking causes PVD. *See, e.g.,* Affidavit of David Burns ¶ 7. Most significantly, deposition testimony by Dr. Burns indicates that "there is a dose-response relationship" between the number of cigarettes smoked and the risk of developing PVD. *See* Burns depo. p. 180. Thus, even if plaintiff smoked mostly Camel cigarettes, the additional Lucky Strike cigarettes that he smoked increased his risk of PVD. A reasonable jury could conclude, based on this evidence and evidence that plaintiff developed PVD, that his smoking of both Camel and Lucky Strike cigarettes caused or contribute to his case of PVD.

Kansas follows a rule of comparative fault. According to P.I.K.3d § 105.01, a party "is at fault when he or she is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which the claim is made." Under comparative fault, the amount of each party's liability is allocated by a jury and, so long as plaintiff's smoking Lucky Strike cigarettes contributed to his developing PVD, plaintiff may recover against Brown & Williamson. The substantial factor test must not be read so as to undermine the principle of comparative fault. *See, e.g., Bockrath v. Aldrich Chemical Co.,* 21 Cal.4th 71, 86 Cal.Rptr.2d 846, 980 P.2d 398, 403 (1999) (" 'The substantial

factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' Thus, a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor.' But a very minor force that does cause harm is a substantial factor. This rule honors the principle of comparative fault.").

Discussion by the Kansas Supreme Court of the meaning of "substantial factor" suggests the test would not preclude recovery in this case. In *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984), the court discussed the meaning of a "substantial factor" and looked to the Restatement (Second) of Torts § 413, comment a, for the meaning of "substantial." According to the comment, "substantial" is used "to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of so many of them is so insignificant that no ordinary mind would think of them as causes." Restatement (Second) of Torts § 431, comment a. The court believes that a reasonable jury could conclude, based on the evidence that cigarette smoking caused plaintiff to develop PVD and that the risk of developing PVD increases with the number of cigarettes smoked, that plaintiff's smoking Lucky Strike cigarettes was more than a cause of his PVD in the "philosophic sense." Summary judgment, therefore, is not appropriate.

Unlike the case Brown & Williamson cites from the District of South Carolina, *Little v. Brown & Williamson Tobacco Corp.*, 98–1879–23 (D.S.C. Jan. 4, 2001), there is no evidence in the record that the number of Lucky Strike cigarettes smoked by plaintiff was not a factor causing his case of PVD. In *Little*, there was evidence that the plaintiff's smoking of Barclay cigarettes amounted to less than one percent of his total smoking and expert testimony that this level of exposure was unlikely to have contributed to the plaintiff's development of lung cancer. In this case, there is no evidence indicating that the amount of Lucky Strike cigarettes smoked by plaintiff did not contribute to his development of PVD. The testimony of Dr. Cossman is not equivalent to the testimony of physicians in *Little*. Dr. Cossman agreed that if plaintiff "smoked Lucky Strikes rarely, if at all" his smoking of Lucky Strike cigarettes would be an insignificant, noncontributing factor to his development of PVD. The evidence in the record does not indicate that plaintiff smoked Lucky Strike cigarettes "rarely, if at all." Dr. Cossman's response to a hypothetical question unsupported by the record, and to which a timely objection was lodged, is not evidence that plaintiff's smoking of Lucky Strike cigarettes was not a factor causing his PVD. Furthermore, the testimony of Dr. Burns that plaintiff's risk of developing PVD increased with the number of cigarettes he smoked would suggest that smoking any number of Lucky Strike cigarettes in addition to Camel cigarettes would contribute to plaintiff's risk of developing PVD.[15] To the extent that the testimony of the two physicians might conflict,

a jury question would exist and preclude summary judgment.

■■■ Brown & Williamson argues that the causation requirement set out in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir.1986), is "accepted law in Kansas." In support, Brown & Williamson cites the decision in *Lyons v. Garlock, Inc.*, 12 F.Supp.2d 1226, 1228 (D.Kan.1998). A decision by a federal district court does not create binding Kansas precedent.[16] Kansas courts have not, to date, followed or discussed the *Lohrmann* decision. Even if Kansas were to adopt the *Lohrmann* standard, however, the court believes that plaintiff would survive summary judgment. In *Lohrmann*, the Fourth Circuit applied Maryland law and held that to survive summary judgment, a plaintiff must produce evidence that a plaintiff's exposure to a toxic substance was "on a regular basis over some extended period of time." The evidence in the record indicates that plaintiff smoked Lucky Strike cigarettes when Camel cigarettes were not available over the course of approximately 40 years. The court believes that a jury could conclude on the basis of this evidence that plaintiff's exposure to Lucky Strike cigarettes meets the causation requirement of *Lohrmann* or a similar standard.

In *Lyons*, the court examined two Tenth Circuit decisions discussing the *Lohrmann* standard, *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1491 (10th Cir.1990), and *Blair v. Eagle–Picher Industries, Inc.*, 962 F.2d 1492, 1495 (10th Cir.1992). In *Dillon*, the Tenth Circuit held that testimony by the plaintiff that he had handled "all kinds of asbestos insulation prod-

---

**15.** Evidence of this nature does not appear to have been in the record in *Little*.

**16.** Furthermore, in *Lyons*, the court did not conclude that the Kansas Supreme Court

would adopt the *Lohrmann* standard of causation. Instead, the court rejected the plaintiff's argument that the Tenth Circuit had modified the *Lohrmann* test.

ucts at the refinery" and testimony by an insulator identifying the defendant's product at the refinery was sufficient evidence to survive summary judgment under Oklahoma law, requiring "significant probability" that the defendant's product caused the plaintiff's damages. *Dillon,* 919 F.2d at 1492. The district court in *Dillon* "applied the Oklahoma standard while approving the [*Lohrmann*] method for analysis of the facts under the standard." *Id.* On the other hand, in *Blair,* the Tenth Circuit held that the plaintiff's evidence that the defendant's product "was somewhere inside a forty-acre facility at the same time as [the plaintiff]" was not sufficient evidence under the *Lohrmann* test.[17] 962 F.2d at 1495. In this case, plaintiff has presented evidence of regular exposure to Lucky Strike cigarettes during his 40 years of smoking. While the evidence currently in the record does not show how extensive this exposure was, the holding in *Dillon* that evidence that the defendant's insulation products were used at the plaintiff's work and that the plaintiff handled all of the insulation products was sufficient to survive analysis under *Lohrmann* suggests that plaintiff's evidence would also survive under *Lohrmann* or a similar test.[18]

Plaintiff also argues that because the pretrial order includes a count for civil conspiracy between Brown & Williamson and R.J. Reynolds, the manufacturer of Camel cigarettes, that Brown & Williamson must be held accountable for all of the Camel cigarettes smoked by plaintiff. Brown & Williamson responds by arguing that plaintiff has not met his burden under Federal Rule of Civil Procedure 56 to produce sufficient evidence of a civil conspiracy. Brown & Williamson misses the point of plaintiff's argument. Brown & Williamson has not moved for summary judgment on the civil conspiracy claim on the basis that there is an absence of evidence of a civil conspiracy. The first time that the argument about an absence of evidence of a civil conspiracy arises is in Brown & Williamson's reply. Plaintiff is simply arguing that if he prevails at trial on his civil conspiracy claim, even if he cannot prove that Lucky Strike cigarettes alone caused any of his damages, that he may recover from Brown & Williamson for damage caused by Camel cigarettes under the civil conspiracy claim. In this respect, Brown & Williamson should not be dismissed from the case on summary judgment even if the court agreed with Brown & Williamson's argument that Lucky Strike cigarettes did not cause plaintiff's PVD. Plaintiff is correct and, for this additional reason, summary judgment is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' joint motion for summary judgment (doc. # 462) is **denied** and defendant Brown & Williamson's motion for summary judgment (doc. # 468) is **denied.**

---

17. According to the Tenth Circuit in *Blair,* the Tenth Circuit decision in *Dillon* "approved a three-part analysis of facts under the significant probability standard of [Oklahoma law]. The three-part analysis is derived from the Fourth Circuit opinion in [*Lohrmann*]." 962 F.2d at 1495.

18. The facts of this case are also distinguishable from *Blair,* where the evidence established that plaintiff may or may not have had contact with the defendant's product.